IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEGAN PASSARELLA,

|                          | Plaintiff,   |                  | OPINION and ORDER |
|--------------------------|--------------|------------------|-------------------|
|           v.             |              |                  |   22-cv-287-jdp   |
| ASPIRUS, INC.,           |              |                  |                   |
|                          | Defendant.   |                  |                   |

---

SANDRA DOTTENWHY,

|                          | Plaintiff,   |                  | OPINION and ORDER |
|--------------------------|--------------|------------------|-------------------|
|           v.             |              |                  |   22-cv-342-jdp   |
| ASPIRUS, INC.,           |              |                  |                   |
|                          | Defendant.   |                  |                   |

---

CYNTHIA CLUTTER,

|                          | Plaintiff,   |                  | OPINION and ORDER |
|--------------------------|--------------|------------------|-------------------|
|           v.             |              |                  |   22-cv-392-jdp   |
| ASPIRUS WAUSAU HOSPITAL, INC., |        |                  |                   |
|                          | Defendant.   |                  |                   |

---

Plaintiffs Megan Passarella, Sandra Dottenwhy, and Cynthia Clutter were health care workers at hospitals managed by Aspirus, Inc. Plaintiffs refused to comply with Aspirus's rule requiring employees to be vaccinated against COVID-19 and they were terminated. Plaintiffs filed these three suits contending that they were entitled to a religious exemption under Title VII of the 1964 Civil Rights Act. They also say that Aspirus violated the Americans with Disabilities Act by requiring regular COVID tests.

Aspirus moves to dismiss the suits for failure to state a claim. Aspirus contends that plaintiffs' Title VII claims fail because they object to the vaccine mandate as a matter of medical judgment rather than religious conviction. Aspirus contends that plaintiffs' ADA claims based on their objections to COVID testing fail because they failed to exhaust those claims. Dkt. 5.[1]

The court will decide the motions in one order because all three cases are about Aspirus's vaccine mandate, plaintiffs are represented by the same counsel, and the parties make similar arguments in each case. As for the Americans with Disabilities Act claims, none of the plaintiffs exhausted their administrative remedies prior to filing suit. The ADA claims will be dismissed without prejudice.

The court will dismiss Passarella's and Dottenwhy's Title VII claims because their exemption requests show that their objections to the COVID vaccine were based on their medical judgment that the vaccine was unsafe. The court will not dismiss Clutter's Title VII claim at the pleading stage because she has alleged that her objection to the vaccine requirement is grounded in a sincere religious conviction. Clutter's case will proceed, but solely on her Title VII claim.

BACKGROUND

A.  Scope of the pleadings

Both sides have submitted documents outside the complaint, which raises the question whether it is appropriate to consider those documents in deciding Aspirus's motions to dismiss. A court may consider documents outside the complaint in deciding a motion to dismiss under

---

[1] All citations are to case No. 22-cv-287-jdp except where noted.

Federal Rule of Civil Procedure 12(b)(6) without converting it into a motion for summary judgment if the documents are referred to in the complaint, concededly authentic, and central to the plaintiff's claim. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). The materials may be provided by either party, so long as they meet these three requirements. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). The rule "prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)) (cleaned up).

The parties have submitted similar materials in all three cases, specifically the plaintiffs' religious exemption requests and appeals, as well as the charges plaintiffs filed with the Equal Employment Opportunity Commission (EEOC). Each plaintiff refers to her exemption request and her EEOC charge in her complaint, and the documents are central to their claims. *See Stoetzer v. First State Bank of Bloomington*, No. 21-cv-1138-JES-JEH, 2022 WL 386018 (C.D. Ill. Feb. 8, 2022) (considering EEOC charge at motion to dismiss stage); *Egelkrout v. Aspirus, Inc.*, No. 22-cv-118-bbc, 2022 WL 2833961 (W.D. Wis. July 20, 2022) (same). And no party has contested the authenticity of any of the exhibits submitted on the motion. *See Hecker*, 556 F.3d at 582. So the court will consider those materials in deciding the motions to dismiss.

## B. Factual background

The court draws the following facts from plaintiffs' complaints, their exemption requests, and their EEOC charges. When deciding a Rule 12(b)(6) motion to dismiss, the court

must accept all of the plaintiff's plausible factual allegations as true and draw all reasonable inferences in her favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

### 1. Aspirus's COVID-19 policies

Defendant Aspirus, Inc. is a non-profit health system that operates hospitals, clinics, and pharmacies in Wisconsin and the upper peninsula of Michigan.[2] Plaintiffs were employed at Aspirus hospitals in Wisconsin. In August 2021, Aspirus began requiring employees who had not been vaccinated against COVID-19 to submit to bi-weekly testing for the virus. All plaintiffs complied with the testing requirement.

A few months later in November 2021, Aspirus notified its employees that it would require them to be vaccinated against COVID as a condition of employment. Employees who did not receive the vaccine would be terminated in December. Aspirus allowed employees to request a religious exemption from the vaccination requirement. Aspirus told employees that requests "including non-religious rationale anywhere in the submission will likely result in denial." Dkt. 1, ¶ 19. Aspirus's examples of non-religious rationale included the vaccine's "adverse impact on fertility" and a "lack of safety or efficacy information." *Id*. Each plaintiff submitted a religious exemption request.

### 2. Plaintiffs' religious exemption requests and appeals

#### a. Sandra Dottenwhy

Plaintiff Sandra Dottenwhy was employed as a pharmacy technician. Dottenwhy sought an exemption from the vaccination requirement. Her explanation was:

---

[2] Aspirus Wausau Hospital, Inc., is the defendant in Clutter's case. But her complaint shows that Aspirus Wausau Hospital is also managed by Aspirus. *See* No. 22-cv-392-jdp, Dkt. 1, ¶¶ 1, 5.

4

> Description of beliefs:
>
> I am asserting my rights as a Christian to be exempt from taking this vaccine. I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body. I also feel that it's my body and no one has the right to tell me what to do with my personal being. I have prayed about this and have asked GOD for guidance, and believe that HE is with me on this decision.

No. 22-cv-342, Dkt. 8-1. Her request was denied.

> Dottenwhy appealed, stating:
>
> So if it's my body my choice when it comes to abortion, WHICH I AM TOTALLY AGAINST. Why isn't it my body my choice when it comes to a vaccine, WHICH I AM TOTALLY AGAINST. In my opinion this vaccine was developed too quickly. Not enough time for deep study. I have prayed long and hard about this and I am fearful of the effects. The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God. I have read through Title VII of the Civil Rights Act of 1964, and I pray you would not go against my rights as a Christian and employee that has served your organization and the community for 18 years.

No. 22-cv-342, Dkt. 8-2. The appeal was denied.

**b. Megan Passarella**

Plaintiff Megan Passarella worked at Aspirus as a registered nurse. Passarella requested an exemption from the vaccination requirement, which was denied. Passarella doesn't say what she wrote in her initial exemption request, and the parties didn't submit a copy of the request to the court.

Passarella appealed. With her appeal, Passarella submitted a five-page letter stating that her religious beliefs prevented her from receiving the vaccine. Dkt. 1-1. Passarella began with the doctrinal basis for her request. She said that as a Christian, she believes that God dwells within her body. Thus her body is a temple, which she must use to glorify God and protect

5

from defilement. She entrusts her body to God, who is her ultimate healer and protector.

Turning specifically to the COVID vaccine, she said:

> After prayerful consideration, I don't feel at peace about receiving
> the COVID vaccine. I believe that I must trust God with my body
> (His temple) and that he will provide for me and protect me as he
> has already proven time and time again during my life. . . .
> Although, I have received other vaccines, in which my "sincerely
> held belief" might be brought into question, to which I would
> respond, I have made shrewd decisions regarding the vaccines I
> put into my body. One example of this is the Gardasil vaccine. I
> have not received this vaccine, as there is plenty of evidence of
> adverse, debilitating injuries resulting from receiving the vaccine.
> Although it comes highly recommended by physicians, it goes
> against my conscience to receive it; therefore, I abide by that, as I
> know it is a message from God. James 4:17 states that failing to
> obey our conscience is a sin. Therefore, this means receiving the
> vaccine would not be acting in accordance with God. It would be
> a sin for me to receive it.

Dkt. 1-1, at 3. Passarella's appeal was denied.

### c.  Cynthia Clutter

Plaintiff Cynthia Clutter worked for Aspirus as a CT technician. She sought an

exemption, stating:

> Description of beliefs:
>
> I am seeking an exemption from the Covid-19 vaccination based
> upon my informed moral conscience and best judgment.
> Vaccination is not a universal obligation. Religious leaders of all
> faiths agree. Mandating me to take the vaccination imposes the
> judgments of others upon my own moral conscience, which is
> contrary to my sincerely held beliefs.
>
> . . . .
>
> Consistency rationale:
>
> I oppose all vaccines. My children are not vaccinated. My
> husband has never been vaccinated. My son is not circumcised.
> We are the way God made us. It is my right[ as] an American and

> a Christian to remain that way. I feel forcing one to get a vaccine again[st] their will is a complete violation of my rights.

No. 22-cv-392, Dkt. 11-1. Her request was denied.

Clutter appealed, stating, in pertinent part:

> Explanation of appeal:

> The voice of God lives inside me failing to obey is a sin. I am obligated to follow his commands and the words of the Bible[.] My conscience come from God and failing to obey is a sin. There are many vers[es] in the Bible that can be quoted supporting my beliefs. . . . My religious beliefs are sincerely held and must be followed. I want to preserve my religious claims and that is what prevents me from taking the COVID shot.

No. 22-cv-392, Dkt. 11-2. Aspirus denied her appeal.

### 3. Plaintiffs's terminations and EEOC charges

Plaintiffs did not receive the vaccine after their requests for exemptions were denied. Aspirus terminated plaintiffs' employment on December 6, 2021. Plaintiffs filed charges of religious discrimination against Aspirus with the EEOC, alleging that they had been fired for failing to comply with the vaccination requirement. None of the EEOC charges included allegations about the COVID testing requirement. *See* Dkt. 6-1 (Passarella); No. 22-cv-342-jdp, Dkt. 8-3 (Dottenwhy;) No. 22-cv-392-jdp, Dkt. 11-3 (Clutter). The EEOC issued plaintiffs right-to-sue letters, and plaintiffs sued Aspirus in this court.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The court begins with plaintiffs' claims based on religious discrimination under Title VII, and then turns to their claims under the Americans with Disabilities Act.[3]

## A. Title VII religious discrimination claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and job applicants based on their religion. 42 U.S.C. § 2000e-2(a). The law requires employers to provide reasonable accommodations for the religious practices of employees, unless any reasonable accommodation would pose an undue burden on the employer. *Adeyeye v. Heartland Sweeteners*, LLC, 721 F.3d 444, 448 (7th Cir. 2013).

To make out a prima facie case of religious discrimination based on the failure to accommodate, a plaintiff must show that: (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) that she called the religious observance or practice to her employer's attention; and (3) that the religious observance or practice was the basis for her discharge. *Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to show that any reasonable accommodation would impose an undue burden on defendant. *Id.*

The issue at this point in the case is whether plaintiffs have adequately pleaded their prima facie case. Aspirus moves to dismiss plaintiffs' claims on the ground that plaintiffs have not alleged the first element, that they hold a religious belief that conflicts with the vaccination

---

[3] In her brief, Dottenwhy states that she has pleaded an age discrimination claim. *See* No. 22-cv-342, Dkt. 11, at 20. But she does not allege that she was discriminated against because of her age in her complaint, and she does not include an age discrimination claim in her causes of action. *See* Dkt. 1, at 9–12. The court concludes that Dottenwhy has not pleaded an age discrimination claim.

requirement. Aspirus contends that plaintiffs asked to be excused from the vaccination requirement out of concern for the safety of the vaccine, which is a matter of personal judgment, not a religious belief or practice.

Religion is, at least initially, defined broadly under Title VII:

> The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). The definition goes on to narrow the concept by incorporating the requirements that any religious accommodation must be reasonable and not impose any undue burden. But the accommodation requirements are not at issue at this point in this case. So, for purposes of Aspirus's motion, the court construes the concept of religion broadly.

A belief is religious if it is: (1) "religious in the person's own scheme of things"; and (2) sincerely held. *Adeyeye*, 721 F.3d at 448 (internal quotation marks omitted). A belief is religious in a person's own scheme of things if it "occup[ies] a place parallel to that filled by God in traditionally religious persons." *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). Such beliefs "deal[] with issues of ultimate concern," such as "matters of the afterlife, spirituality or the soul, among other possibilities." *Adeyeye*, 721 F.3d at 448 (internal quotation marks omitted). A plaintiffs' assertion that "[her] belief is an essential part of a religious faith must be given great weight." *Id*. (quoting *United States v. Seeger*, 380 U.S. 163, 184 (1965)). The court does not concern itself with the truth or validity of religious belief, nor does it matter whether the belief is part of a mainstream religion or an idiosyncratic one. *Id*. Nevertheless, the court must distinguish between religious belief and other matters of personal conviction,

9

because only religious beliefs warrant the heightened protection of the First Amendment or Title VII. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

The EEOC has issued guidance consistent with these principles. According to the EEOC, "objections to a COVID-19 vaccination requirement that are purely based on . . . nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (last updated July 12, 2022).[4] However, a religious belief that "overlap[s]" with a political view is still protected by Title VII, so long as the view "is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id*.

### 1. Plaintiffs Passarella and Dottenwhy

Passarella and Dottenwhy sought exemptions on similar grounds, so the court will consider their claims together.

In Dottenwhy's request for exemption, No. 22-cv-342, Dkt. 8-1, she claims a right to refuse the vaccine "as a Christian," and she says that she has prayed over the matter and believes that God supports her decision. But her request is predicated fundamentally on her concerns with the safety of the vaccine and her right to bodily integrity. In her appeal, she says that her body is a temple of the Holy Spirit. But she did not articulate any religious belief that would prevent her from taking the vaccine if she believed it was safe.

Passarella's request for exemption is not in the record. But in her appeal, she sought an exemption for reasons similar to those given by Dottenwhy. Passarella gave a more elaborate

---

[4] *Available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

explanation of how her commitment to her own health is a matter of religious conviction. Her belief that her body is a temple means that she must live a healthful life and not do anything to harm her body. But, as with Dottenwhy, there is no religious belief that would prevent Passarella from taking the vaccine if she believed it was safe. Indeed, Passarella says that she has not refused all vaccines. Rather, she makes "shrewd" decisions about vaccine safety and refuses those she believes pose undue risk.

The court concludes that Dottenwhy and Passarella refused the vaccine based on their personal judgments about vaccine safety and not for religious reasons. They couched their requests in religious terms, claiming that their decisions had been ratified by prayer. But the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion.

The court is not aware of any on-point decision of the Seventh Circuit Court of Appeals. But the reasoning of *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017), is instructive. Fallon, the plaintiff, was terminated from his position as a health care worker after he refused the flu vaccine. He alleged religious discrimination. Although he was not a member of a mainstream religion, he claimed spiritual commitments that led him to believe that he should not harm his own body and that the flu vaccine might do more harm than good. The court held that Fallon's beliefs were not truly religious ones and that his judgment about the flu vaccine was itself simply a medical judgment. The Third Circuit affirmed the district court's dismissal of the complaint for failure to state a claim. *Id*. at 492. Passarella and Dottenwhy beliefs about the COVID vaccine are, like Fallon's beliefs about the flu vaccine, medical judgments about the safety of the vaccine, not matters of religious belief.

Plaintiffs point out that Fallon did not belong to any mainstream religion and the Third Circuit did not regard any of his beliefs to be religious ones. That is a fair point, although this court does not take that distinction to be essential to *Fallon's* holding. Even if Fallon's overall belief system had been systematic enough and profound enough to constitute a religion, his belief about the flu vaccine was still just a medical judgment about the effectiveness of the vaccine.

District courts in the Third Circuit have applied the reasoning of *Fallon* to adherents of mainstream religions, dismissing cases where requests for religious exemptions were based on medical judgments. In *Finkbeiner v. Geisinger Clinic,* the plaintiff asked for an exemption from a COVID testing requirement because "I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good for bad for me." No. 4:21-CV-01903, 2022 WL 3702004, at *2 (M.D. Pa. Aug. 26, 2022). She objected to COVID tests because she was "afraid of the side effects and potential future health risks these chemicals may cause." *Id*. The court concluded that the plaintiff's statements showed that "her opposition stems from her medical beliefs." *Id.* at *4. Likewise, in *Blackwell v. Lehigh Valley Health Network*, the court concluded that the plaintiff's belief that COVID testing was ineffective was not religious because it "challenged the factual and scientific basis" for the employer's testing requirement. No. 5:22-cv-03360-JMG, 2023 WL 362392, at *7 (E.D. Pa. Jan. 23, 2023).

Passarella makes an additional argument for why her claim should not be dismissed. At the same time Passarella was working for Aspirus as a nurse, she was pursuing a master's degree to become a family nurse practitioner. As part of the program, Passarella began a student clinical rotation at the same hospital where she worked. Aspirus also required clinical students to receive the COVID vaccine. Passarella sought and received a separate exemption from

Aspirus's vaccine requirement in her capacity as a clinical student. Passarella says this amounts to an admission from Aspirus that her beliefs are religious and sincerely held.

The court is not persuaded. Aspirus's decision to grant Passarella's request as a student is not a judicial admission that her beliefs are religious for the purposes of a lawsuit under Title VII. Passarella still has the burden to plead facts to show that her beliefs are religious, rather than personal, political, or medical. What matters is the content of her request, not whether Aspirus approved similar requests under different circumstances. Passarella provides no authority that Aspirus is estopped from arguing that an employee's beliefs are not religious because it approved other exemption requests for other categories of individuals.

Because the pleadings show that Passarella and Dottenwhy's objections to the COVID vaccine are medical, not religious, their claims will be dismissed with prejudice.

## 2. Plaintiff Clutter

Clutter's exemption request is subtly different from those of Passarella and Dottenwhy. Clutter initially phrased her exemption request as a matter of "moral conscience" and "best judgment" and she expressed her opposition to all vaccines. A blanket opposition to all vaccines might simply be a medical judgment about the safety of vaccines, no more worthy of protection as a religious belief than Passarella and Dottenwhy's objection to the COVID vaccine.

But Clutter's exemption request provided a religious basis for her anti-vaccine beliefs:

> I oppose all vaccines. My children are not vaccinated. My husband has never been vaccinated. My son is not circumcised. We are the way God made us. It is my right[ as] an American and a Christian to remain that way.

No. 22-cv-392, Dkt. 11-1. The religious basis for Clutter's anti-vaccine beliefs is not thoroughly explained. She does not, for example, describe herself as a strict Christian Scientist who relies entirely on prayer, forswearing all medical intervention. With the benefit of discovery, Aspirus

may yet be able to show that Clutter's anti-vaccine beliefs are really a matter of medical judgment, politics, or some other personal conviction. But on a motion to dismiss, where the court must credit the allegations in the complaint, Clutter has adequately pleaded that her objection to the COVID vaccine is a religious one, rooted in her belief that she must remain as God made her.

Clutter has alleged that she has a religious belief that conflicts with Aspirus's vaccination requirement, so the court will deny Aspirus's motion to dismiss her Title VII claim.

**B. ADA claim**

The ADA prohibits employers from requiring its employees to undergo medical examinations that are not job-related or consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). Plaintiffs allege that Aspirus violated this section of the ADA both by subjecting them to COVID-19 testing and by imposing a vaccine requirement. *See* Dkt. 1, ¶ 51. The challenge to the vaccine requirement fails to state a claim because a medical examination is "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 835 (7th Cir. 2005) (quoting EEOC guidance). Aspirus's vaccine mandate does not "seek information" about plaintiffs' health, so it cannot violate subsection 12112(d).

As for the testing claims, Aspirus provides two reasons for why those must be dismissed. First, it contends that § 12112(d) does not cover plaintiffs because they do not allege that they had an actual or perceived disability. But a non-disabled individual may still bring a claim that they were subjected to an unlawful medical examination under this part of the statute. *Wright v. Ill. Dep't of Children & Family Servs.*, 798 F.3d 513, 522 (7th Cir. 2015) ("All employees,

regardless of whether they have a qualifying disability under the ADA, are protected under [§ 12112(d)])." So the court will not dismiss plaintiffs' ADA claims on that ground.

The second reason has more traction. Before bringing a lawsuit under the ADA, a plaintiff must file a charge with the EEOC. *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018); 42 U.S.C. § 12117(a) (applying Title VII's exhaustion procedures to the ADA). If a plaintiff files suit in federal court, she may bring "only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (internal quotation marks omitted). This requirement serves two purposes: (1) it gives the EEOC and the employer an opportunity to settle the matter; and (2) it ensures that the employer has adequate notice of the conduct the employee is challenging. *Id*. Aspirus contends that plaintiffs failed to exhaust their administrative remedies with respect to this claim because they did not include that claim in their EEOC charges.

The failure to exhaust administrative remedies is an affirmative defense. *See Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007). Courts "should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). But for reasons explained above, the court has determined that it is appropriate to consider plaintiffs' EEOC charges at the pleading stage. And plaintiffs don't contend that the exhaustion issue should be decided later in the case, presumably because the court has all the information it needs to decide the issue. So the court will consider the issue here. *See Egelkrout*, 2022 WL 2833961 (deciding exhaustion at 12(b)(6) stage).

The decisive question is whether the ADA claims asserted in these cases are like, or reasonably related to, the claims asserted in their EEOC charges. To be reasonably related, the EEOC charge and the complaint "must describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Here, none of plaintiffs mentioned the testing requirement in their EEOC charge. Instead, the plaintiffs alleged only that they had been fired for failing to comply with Aspirus's vaccination mandate. Thus, the plaintiffs' charges do not describe the same conduct as the ADA claims they assert in their lawsuits. "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Because their charges complain only about the vaccine mandate, they did not exhaust any claims about the allegedly unlawful COVID tests.

Plaintiffs contend that, even if their EEOC charges did not exhaust their claims, the claims should not be dismissed because they have filed a second round of EEOC charges related to the testing requirement. Dottenwhy and Clutter have already received their right to sue letters for their second charges, *see* No. 22-cv-342, Dkt. 11-2 (Dottenwhy); No. 22-cv-392, Dkt. 12-1 (Clutter), and Passarella states that she will receive a second right to sue letter "at some point," Dkt. 9, at 24. Plaintiffs argue that it is more efficient to allow them to proceed on their ADA claims than to make them re-file their ADA claims at a later date. But "[a]n ADA plaintiff must file a charge with the EEOC *before* bringing a court action against an employer." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014) (emphasis added); *see also Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies"); *Ford v. Johnson*, 362 F.3d 395,

398 (7th Cir. 2004) (stating that there can be "no suit under the employment discrimination laws until the parties have had time for administrative conciliation.")

Plaintiffs provide no authority that would allow a plaintiff to exhaust an ADA claim after the suit is filed. To the contrary, courts routinely dismiss "suit[s] that begin[] too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending." *Ford*, 362 F.3d at 398 (citing cases applying the Prison Litigation Reform Act and the Federal Tort Claims Act). The court will dismiss plaintiffs' ADA claims without prejudice.

## ORDER

IT IS ORDERED that:

1. Defendant Aspirus, Inc.'s motion to dismiss in case No. 22-cv-287-jdp, Dkt. 5, is GRANTED. Plaintiff Megan Passarella's religious discrimination claim is DISMISSED with prejudice. Plaintiff's claim under the ADA is DISMISSED without prejudice for failure to exhaust her administrative remedies. The clerk of court is directed to enter judgment for defendant and close the case.

2. Defendant's motion to dismiss in case No. 22-cv-342-jdp, Dkt. 7, is GRANTED. Plaintiff Sandra Dottenwhy's religious discrimination claim is DISMISSED with prejudice. Plaintiff's claim under the ADA is DISMISSED without prejudice for failure to exhaust her administrative remedies. The clerk of court is directed to enter judgment for defendant and close the case.

3. Defendant's motion to dismiss in case No. 22-cv-392-jdp, Dkt. 10, is GRANTED in part. Plaintiff Cynthia Clutter's claim under the ADA is DISMISSED without prejudice for failure to exhaust her administrative remedies. The motion is DENIED as to plaintiff's Title VII claim.

Entered March 9, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

17